J. D. WALLACE, Commissioner of Employment Security and Standard Iron and Wire Works, Inc., Appellants,

v.

Oscar C. SULLIVAN, Appellee.

Supreme Court of Tennessee.

Feb. 6, 1978.

Sam J. McAllester, Jr., Nashville, William T. Alt, Chattanooga, for appellants.

Michael S. Prichard, Chattanooga, for appellee.

## OPINION

BROCK, Justice.

This is a proceeding by plaintiff, Oscar C. Sullivan, to secure unemployment insurance benefits under the Tennessee Employment Security Law, T.C.A., § 50–1301, *et seq.* The administrative agency denied the claim upon grounds that the plaintiff-employee had, without just cause, refused suitable employment and, therefore, was not available for work. The plaintiff-employee sought review of the administrative decision in the Chancery Court for Bledsoe County. The Chancellor held that upon the undisputed facts the plaintiff was not disqualified for benefits by reason of his refusal to accept the job in question because such refusal, in the opinion of the Chancellor, was not without good cause. Accordingly, the Chancellor reversed the administrative decision and awarded benefits. From the decree of the Chancellor the Commissioner and the employer have appealed to this Court.

The plaintiff was employed as a skilled machine operator at a wage of $4.30 per hour when he received notice of a layoff due to a reduction in force. Upon receiving notice of the layoff, plaintiff was approached by his supervisor who informed him that pursuant to the contract between his union and the employer, Standard Iron and Wire Works, Inc., he, by virtue of his seniority, could "roll back" another employee of less seniority and take a grinder's job which would pay him $3.80 per hour, or, in the alternative, he could elect to be laid off and maintain his seniority for a period of twelve months. The plaintiff elected not to roll back but instead to accept the layoff and file a claim for unemployment compensation benefits.

From the very beginning it has been the plaintiff's contention that the position of grinder, which was offered to him by the employer pursuant to the union contract, was not "suitable work" within the meaning of T.C.A., § 50–1324(C). He complained that it was an unskilled position, whereas his former position was a skilled one, and that the working conditions as a grinder would have been detrimental to his health because of the dusty atmosphere in which a grinder works. It appears, however, that his primary reason for refusing to accept the grinder's job was that it paid $20.00 less in wages per week; he so testified at the hearing before the Board of Review.

■ T.C.A., § 50–1324(C), provides that an employee shall be disqualified for benefits "if the commissioner finds that he has failed without good cause . . . to accept suitable work when offered . . . ." and that "in determining whether or not any work is suitable for an individual, the commissioner shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence." It is by these provisions of the law that we must determine whether the plaintiff-employee disqualified himself to receive unemployment benefits by his refusal to roll back another employee and accept a grinder's position. Although the findings of fact of the Board of Review are conclusive upon the courts if there be any evidence to support them, T.C.A., § 50–1325(I), in a case such as this in which the facts are not in dispute it is the duty of the Court to apply the law to those facts without indulging a presumption of correctness of the conclusion of the Board of Review. *Aladdin Industries, Inc. v. Scott,* 219 Tenn. 71, 407 S.W.2d 161 (1966); *Cooper v. Burson,* 221 Tenn. 621, 429 S.W.2d 424 (1968).

■ It is our conclusion that the Board of Review correctly applied the law to the facts of this case in determining that the plaintiff was disqualified because of his failure, without good cause, to accept suit-

able work. First, we hold that the grinder's position which was offered to the plaintiff was "suitable work" considering all the facts and circumstances, including those which the Commissioner is enjoined to consider by the provision above-quoted from T.C.A., § 50–1324(C)(1). The record does not show that the work of the grinder would involve an unreasonable risk to the plaintiff's health, safety or morals. The plaintiff had worked as a grinder prior to his promotion to the position of machine operator and was certainly physically fit and properly trained to perform the work of the grinder. The insistence of the plaintiff that the grinder's job should be considered unsuitable because it paid $20.00 less per week than he had been earning in his position as machine operator is not supported by the authorities. Certainly, experience and prior earnings are very relevant considerations in determining suitability of offered employment, and a discharged employee will not be required to accept substantially less favorable wages; nevertheless, this Court has held that claimants will not be permitted to draw compensation until their former jobs are again available when reasonable, although less lucrative alternatives, do exist which they refuse to accept. *Aluminum Company of America v. Walker,* 207 Tenn. 417, 340 S.W.2d 898 (1960); *Aladdin Industries v. Scott, supra; Moore v. Commissioner of Employment Security,* 197 Tenn. 444, 273 S.W.2d 703 (1954). The *Aluminum Company of America v. Walker* case was quite similar to the instant case and this Court therein said:

". . . a payment of unemployment compensation to these men, notwithstanding their refusal to accept the next best available work, would have amounted to a financing of each of these men . . . until there became available to him his old job or one paying equal wages.

"But it is not the purpose of the Employment Security Law to pay unemployment compensation to employees let out for lack of work until there becomes available to such employee his old job or one paying equal wages. Its purpose is to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. T.C.A. § 50–1302." 207 Tenn. at 419, 340 S.W.2d at 901.

In this case the plaintiff has been given the option of returning to his old position of grinder which he held less than two years previously. In cases wherein the claimant has been offered the next best available job which his employer has to offer, this Court and others have held that pay differentials of up to $50.00 per week should be considered acceptable unless reasonable alternative employment could be found. *Aluminum Company of America v. Walker, supra; In Re Claim of Krystofik,* 284 App.Div. 34, 130 N.Y.S.2d 137 (1954); *Glenn Alden Coal Company v. Unemployment Compensation Board of Review,* 169 Pa.Super. 356, 82 A.2d 64 (Pa.1951).

In determining the suitability of offered employment the claimant's desire to obtain a job commensurate with his skills and with his prior earnings must be balanced against the length of time he remains unemployed. T.C.A., § 50–1324(C)(1).

"Attention is given to the expectancy of securing employment of the grade for which the worker's capacity fits him and to the length of unemployment, because work unsuitable at the beginning may be deemed suitable after a lapse of time." Sanders, *Disqualification for Unemployment Insurance,* 8 Vand.L.Rev. 307, 331 (1955).

Thus, in *Hallahan v. Riley,* 94 N.H. 48, 45 A.2d 886 (1946), it was held that after ten weeks of unemployment a laborer discharged from skilled work earning $1.04 per hour could no longer claim as "unsuitable" an offer of unskilled work paying only $0.60 per hour even though she had justifiably refused the offer earlier. Three and one-half months had gone by at the time plaintiff's case was heard by the Board of Review and at that time he had still refused the option of rolling back to the position of grinder.

The collective bargaining agreement in the instant case provided that a laid-off employee should be entitled to immediate reinstatement to his former position as soon as business conditions permitted the company to refill that position. In our opinion, this factor considerably restricted the degree of selectivity allowable to the plaintiff in selecting suitable alternative employment.

We conclude that, under all of the circumstances appearing, the decision of the Board of Review that the position of grinder offered to the plaintiff was suitable work was a reasonable and correct one under the law.

As noted earlier, the Chancellor reversed the decision of the Board of Review and awarded benefits, not because he found that the grinder's position was unsuitable work, but because, assuming it to be suitable work, the plaintiff, nevertheless, had good cause for refusing it. The Chancellor found this good cause for refusal to exist because of the fact that in order to obtain the grinder's position the plaintiff would have to "roll back" a fellow employee, thereby depriving such other employee of his livelihood. Requiring an employee to take the job of another or else face denial of unemployment compensation was held by the Chancellor to be a violation of both the purpose and spirit of the Employment Security Act.

The term "good cause" is not defined in the statute. But courts of other states construing similar statutes have held that "good cause" means an adequate cause, a cause that comports with the purposes of the state's unemployment insurance statute and with its other laws. *Syrek v. California Unemployment Insurance Appeals Board,* 54 Cal.2d 519, 7 Cal.Rptr. 97, 354 P.2d 625 (1960); 76 Am.Jur.2d *Unemployment Compensation* § 68 (1975). Our own statute declares it to be the public policy of the state to provide unemployment compensation ". . . for the benefit of persons unemployed through no fault of their own." T.C.A., § 50–1302. Construing the term, "good cause," in the light of this declared public policy, we conclude that good cause to refuse work which is otherwise suitable does not exist merely because the employee's acceptance of the offered position will result in the discharge of a fellow employee of less seniority.

No doubt the Chancellor, in reaching the contrary conclusion, was motivated by the ethical considerations which are obviously present. Nevertheless, the right of an employee with greater seniority to "roll back" another employee of less seniority is a right much prized by labor unions and workers and, no doubt, found its way into the collective bargaining agreement involved in this case by virtue of the insistence of the employees. It has long been the sense of our people that employees of greater seniority should have priority to the available jobs in the event of necessary reductions in force and in rehirings following work layoffs. This right to roll back an employee of less seniority is a right well recognized in the law. Accordingly, we are unable to concur in the conclusion reached by the Chancellor in this case. The job of grinder was there for the plaintiff to take and we hold that it was, under the circumstances, suitable work which was refused by the plaintiff without good cause.

The decree of the Chancery Court is reversed. The decision of the Board of Review is affirmed and the suit is dismissed at the cost of the plaintiff.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.