# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT KNOXVILLE

_____

**FILED**

**November 25, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | |
|---|---|
| **LEWIS G. JONES**, | ) |
| | ) Claiborne County Chancery Court |
| Petitioner/Appellant. | ) No. 11,259 |
| | ) |
| VS. | ) C.A. No. 03A01-9706-CH-00202 |
| | ) |
| **MARGARET C. CULPEPPER**, | ) |
| **Commissioner, Tennessee Department** | ) |
| **of Employment Security, et al,** | ) |
| | ) |
| Respondents/Appellees. | ) |
| | ) |

_____

From the Chancery Court of Claiborne County at Tazewell
**Honorable Billy Joe White, Chancellor**

**William Allen**, Oak Ridge, Tennessee
Attorney for Petitioner/Appellant.

**John Knox Walkup**, Attorney General and Reporter
**Kimberly M. Frayn**, Assistant Attorney General
Attorney for Respondent/Appellee Margaret C. Culpepper, Commissioner, Tennessee
Department of Employment Security.

**Robert L. Crossley**, LONG, RAGSDALE & WATERS, Knoxville, Tennessee
Attorney for Respondent/Appellee Holiday Inn - Cedar Bluff.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**WILLIAMS, Sp. J.**: (Concurs)

Lewis G. Jones appeals the trial court's order affirming the decision of the Board of Review of the Tennessee Department of Employment Security to deny Jones' claim for unemployment compensation benefits. We affirm.

In March 1996, Jones filed a claim for unemployment compensation benefits. Jones' claim denoted Job Shop in London, Kentucky, as the separating employer and indicated the following reason for his separation: "Absent/Tardy/Failure to Call or Report." Job Shop opposed Jones' claim for benefits on the grounds that Jones failed to appear for work without notifying Job Shop and that he voluntarily quit. The Department of Employment Security subsequently denied Jones' claim for unemployment compensation benefits based on its ruling that Jones' "absenteeism and/or failure to properly notify employer of the need to be absent" constituted misconduct.

After Jones appealed the denial of benefits, he was granted a telephonic hearing before the Department's Appeals Tribunal to determine the issues of whether "he voluntarily quit work without good cause or was discharged for misconduct." *See* T.C.A. §§ 50-7-303(a)(1), (2) (Supp. 1996). At the hearing, the following evidence was adduced.

Job Shop is an agency which sends its employees on temporary job assignments with its customers. In January 1996, when he was employed by Job Shop, Jones signed a checklist containing, *inter alia*, the following policies and procedures:

> 3.      I understand that I am an employee of THE JOB SHOP, INC. and only I or THE JOB SHOP, INC. can terminate my employment. When an assignment ends I must report to THE JOB SHOP, INC. office for my next assignment. Failure to do so or to accept my next job assignment will indicate that I have voluntarily quit and will not be eligible for unemployment benefits.
>
> . . . .
>
> 6.      If for some unexpected reason, such as an emergency or illness, I cannot make it to work or will be late, I will contact THE JOB SHOP, INC. as soon as possible so you can call the client and/or find a replacement. My failure to do so may be grounds for dismissal and/or indicate that I have quit.

Jones' first temporary job assignment was a three-day assignment with Firestone

beginning February 14, 1996. On February 16, 1996, the third day of Jones' assignment, Jones failed to report to work at Firestone, and he did not notify Job Shop that he would be absent. Janice Nantz, Job Shop's personnel coordinator, called Jones at approximately 9:30 a.m. on February 16 to inquire about his absence. At that time, Jones informed Nantz that he could not report for work that day because he had a prior appointment. Since that day, Jones has not contacted Job Shop to inquire about further job assignments.

Jones testified that he did not report for work on February 16 because "it was snowing and [he] couldn't get [his] car out of the driveway." The previous day, Jones had warned his supervisor at Firestone that he would not be in on February 16 if it snowed. Jones admitted, however, that he did not notify anyone at Job Shop of his absence from work until Janice Nantz called him on the morning of February 16. Jones also admitted that, after his conversation with Nantz, he neither reported for work on February 16 nor called Nantz back after that date to inquire about future job assignments. Jones explained that he never called Nantz back because, during their conversation, Nantz stated that "[t]his is the way it works, we call you to go in, if you don't go in, we probably won't call you [any] more." Jones interpreted this statement to mean that he had been discharged.

Following the hearing, the appeals referee entered a decision affirming the denial of Jones' claim for unemployment benefits based upon the referee's ruling that the evidence established willful misconduct by Jones. In support of this ruling, the appeals referee reasoned that Jones

> [W]as not in compliance with [his] contract to contact the employer and he refused available work with the client. Both actions demonstrate a disregard of the employer's interest amounting to misconduct.

The appeals referee made the following findings of fact:

> [Jones'] most recent employment prior to filing this claim was with Job Shop, as a temporary employee with a client from February [14], 1996, until February 16, 1996. [Jones] understood the assignment was only a "couple" of days. The client had additional work for [Jones], but [Jones] told the client on February [15], that he would not be in the following day. [Jones] did not contact the employer. About one

and a half hours into [Jones'] shift, the personnel coordinator called [Jones] at home because the client wanted him to come in even though it was late. [Jones] told her he had other plans. Since he did not report to the client for the additional work and did not contact the employer about additional work, he was terminated.

Jones appealed the Appeals Tribunal's decision to the Board of Review, which affirmed, expressly adopting the Tribunal's findings of fact and decision.

After the Board of Review affirmed the Appeals Tribunal's decision, Jones, now represented by counsel, filed a petition to rehear in which he asked for the opportunity to present further evidence concerning the snowfall at his home on February 16, 1996. The Board of Review denied the petition to rehear, and Jones sought judicial review by filing a petition for certiorari in the Chancery Court for Claiborne County.

On appeal from the trial court's order affirming the Board's decision, Jones contends that the record fails to support the Board's conclusion that Jones was discharged for misconduct. Jones argues that, as a matter of law, his absence from work on February 16, 1996, did not constitute misconduct. Jones further contends that the Board erred in denying his petition to rehear in which he sought to present additional evidence of the weather conditions on February 16, 1996.

On appeal from the Board of Review's denial of benefits, our review is limited to determining whether the record contains substantial and material evidence to support the Board's conclusion that the claimant's actions constituted misconduct. *Simmons v. Culpepper*, 937 S.W.2d 938, 943 (Tenn. App. 1996) (citing T.C.A. § 50-7-304(i) (1991)). This Court has adopted the following standard for determining whether a claimant's actions constitute misconduct within the meaning of the unemployment compensation statutes:

> [C]onduct evincing such willful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer.

*Simmons v. Culpepper*, 937 S.W.2d at 944 (quoting *Armstrong v. Neel*, 725 S.W.2d 953, 956 (Tenn. App. 1986)).

Unexcused and unjustified absenteeism may be a basis for a finding of misconduct such as to disqualify a claimant from receiving unemployment compensation benefits. *Simmons v. Traughber*, 791 S.W.2d 21, 26 (Tenn. 1990). As our supreme court stated in *Wallace v. Stewart*, 559 S.W.2d 647, 648 (Tenn. 1977), "[n]o aspect of contract of employment is more basic than the right of the employer to expect employees will appear for work on the day and at the hour agreed upon."

Tennessee courts have declined to quantify the level of absenteeism which will warrant the denial of benefits, instead indicating that such level "must be determined on an ad hoc basis." *Miotke v. Kelley*, 713 S.W.2d 910, 913 (Tenn. App. 1986). Courts addressing this issue have denied benefits where the absenteeism is "excessive" or part of a pattern of conduct. *See Wallace*, 559 S.W.2d at 648 (claimant was discharged for excessive absenteeism after four warnings); *Miotke*, 713 S.W.2d at 913 (after being warned several times, claimant continued to be absent without notifying employer); *see also Trull v. Culpepper*, No. 02A01-9603-CH-00041, 1996 WL 732428, at *4 (Tenn. App. Dec. 20, 1996) (claimant's absences were part of pattern of actions showing substantial disregard for employer's interest). Nevertheless, "[t]he degree of disregard for the employer's interest shown by absenteeism that will equate with misconduct, may involve many factors and the weight and significance to be assigned them defies precise delineation." *Wallace*, 559 S.W.2d at 649.

After careful review and consideration, we conclude that the record in this case contains substantial and material evidence to support the Board's ruling that Jones' actions constituted misconduct. Jones failed to notify Job Shop of his absence from work in direct violation of Job Shop's policies and procedures. When contacted by Job Shop's personnel coordinator, Jones informed her that he could not work that day because he had a prior appointment. When Jones was warned that, if he did not go in to work, Job Shop "probably" would not call him anymore, Jones still did not report for work, nor did he contact Job Shop after that date to inquire about further job

assignments. When viewed in their entirety, Jones' actions evinced a willful disregard of his employer's interest such as to constitute misconduct.

In concluding that the foregoing evidence supports the Board's finding of misconduct, we do not mean to imply that a single unexcused absence from work necessarily constitutes misconduct warranting a denial of unemployment compensation benefits. We merely hold that, under the circumstances of this case, the Board's finding of misconduct is supported by substantial and material evidence.[1]

Alternatively, we note that the record contains substantial and material evidence to support the conclusion that Jones was disqualified from receiving unemployment compensation because he voluntarily left his employment without good cause. *See* T.C.A. § 50-7-303(a)(1) (Supp. 1996). A voluntary act, or a failure to act, "with knowledge that discharge will follow can be considered a voluntary leaving." *Sutton v. Traughber*, 1989 WL 48782, at *3 (Tenn. App. May 12, 1989). In *Sutton*, the claimant violated her employer's work rule which provided that, if an employee was absent for three consecutive days without calling in, the employee was deemed to have quit. *Id*. This court affirmed the denial of unemployment compensation benefits, holding that "given [the employer's] policy and [the claimant's] knowledge of that policy, her failure to call in while being out from work for three consecutive days amounted to a voluntary quitting that disqualified her for unemployment benefits." *Id*. at *4.

In the present case, Job Shop's policies and procedures required Jones (1) to contact Job Shop if he was unable to report for work, and (2) to contact Job Shop for his next job assignment. These policies and procedures provided that Jones' failure to comply would be an indication that he had voluntarily quit. In light of these policies and procedures, Jones' failure to notify Job Shop of his absence on February 16, 1996, and his subsequent failure to contact Job Shop for his next job assignment amounted to a voluntary quitting that disqualified him from receiving

---

[1]In so holding, we reject Jones' argument that the Board erred in denying his request to present additional evidence of the weather conditions on February 16, 1996. At the hearing before the Appeals Tribunal, Job Shop's personnel coordinator, Janice Nantz, conceded that February 16 was "a bad weather day." Accordingly, we fail to see how Jones was prejudiced by the Board's exclusion of additional evidence on this issue.

unemployment compensation benefits.

The trial court's judgment is affirmed and this cause remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellant, for which execution may issue if necessary.

_____
FARMER, J.


_____
CRAWFORD, P.J., W.S. (Concurs)


_____
WILLIAMS, Sp. J. (Concurs)