# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **JAMES P. MITCHELL,** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | **Madison Chancery No. 48842** |
| | ) | |
| **VS.** | ) | **Appeal No. 02A01-9510-CH-00230** |
| | ) | |
| **JAMES DAVENPORT, Commissioner** | ) | |
| **of the Department of Employment** | ) | |
| **Security of the State of Tennessee;** | ) | |
| **NOMA OUTDOOR PRODUCTS,** | ) | |
| **INC.,** | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

**FILED**

**Feb. 12, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF MADISON COUNTY
AT JACKSON, TENNESSEE
THE HONORABLE JOE C. MORRIS, CHANCELLOR

**CONNIE WESTBROOK**
**THOMAS E. VORNBERGER**
Memphis, Tennessee
Attorneys for Appellant

**CHARLES W. BURSON**
**Attorney General & Reporter**
**KIMBERLY M. FRAYN**
**Pursuant to Rule 7 of the Rules**
**of the Supreme Court of Tennessee**
**JENNIFER HELTON SMALL**
**Deputy Attorney General**
Nashville, Tennessee
Attorneys for Appellee, State of Tennessee

**CARY SCHWIMMER**
**KAREN W. GROCHAU**
**KIESEWETTER WISE KAPLAN SCHWIMMER & PRATHER, PLC**
Memphis, Tennessee
Attorneys for Appellee, Noma Outdoor Products, Inc.

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

In this unemployment compensation case, James Mitchell ("Mitchell") filed a claim

for unemployment compensation with the Tennessee Department of Employment Security ("TDES"). TDES approved Mitchell's claim, and Mitchell's employer, NOMA Outdoor Products, Inc. ("NOMA"), appealed TDES' claim approval. On appeal, the Appeals Tribunal ruled that Mitchell was not eligible for unemployment benefits pursuant to T.C.A. § 50-7-303(a)(2) due to work-connected misconduct and declared that the $1,190.00 in unemployment benefits that Mitchell had previously received was an overpayment. Mitchell thereafter requested that TDES waive his $1,190.00 overpayment pursuant to T.C.A. § 50-7-303(d)(2). The Appeals Tribunal denied Mitchell's request for a waiver of the overpayment, and Mitchell appealed the decision of the Appeals Tribunal to the Board of Review. The Board of Review adopted the findings of fact and decision of the Appeals Tribunal and denied Mitchell's request for a waiver of the overpayment. Mitchell thereafter filed a petition to rehear which was denied by the Board of Review. Pursuant to T.C.A. § 50-7-304(i), Mitchell filed a petition for certiorari in chancery court seeking judicial review of the Board's decision. The chancery court dismissed Mitchell's petition for certiorari and affirmed the decision of the Board of Review, denying Mitchell's request for a waiver of the overpayment. Mitchell appeals from the order of the chancery court arguing that the chancery court erred in admitting additional evidence and erred in not vacating or setting aside the decision of the Board of Review. For the reasons stated hereafter, we affirm the judgment of the chancery court.

## FACTS

The following facts were found by the Appeals Tribunal. From September 13, 1988 until May 18, 1993, Mitchell was employed by NOMA as an assistant controller in credit and collections. As assistant controller, Mitchell's employment responsibilities included pursuing late payments and employing collection agencies to pursue late payments. After an investigation by the U.S. Attorney's Office, Mitchell was indicted in two counts of an indictment as one of the credit and collection managers who received monetary kickbacks from collection agencies. As a result of the indictment, Mitchell was arrested by FBI officials while at work on May 3, 1993. An FBI investigation uncovered two checks made

2

payable to Mitchell from collection agencies named in the indictment for one-third of the amount that NOMA had paid the collection agencies two days earlier. An investigation by NOMA following Mitchell's arrest revealed a lack of documentation in their files concerning the collection agencies under indictment as compared to their documentation regarding other collection agencies in their files. NOMA also discovered that money was not collected and forwarded to them in the usual manner by the collection agencies named in the indictment. NOMA's files indicated a lack of charges to debtors for fees paid to the indicted collection agencies, which was inconsistent with NOMA's procedure with other collection agencies. In addition, after NOMA personally contacted some of the debtors involved, the debtors indicated that they had had no contact with any collection agencies trying to collect a debt. NOMA thereafter sought information from Mitchell concerning the irregularities uncovered in their investigation. When asked about the discrepancies, Mitchell refused to respond, and NOMA terminated Mitchell's employment.

On June 1, 1993, Mitchell filed a claim for unemployment compensation with TDES. NOMA subsequently submitted its answer to TDES' request for separation information and stated in its answer that Mitchell was "terminated, effective May 18, 1993, because of breach of the duties of loyalty and trust, and misuse of position. Received unauthorized payment from vendor."

TDES approved Mitchell's claim for unemployment benefits on June 9, 1993, and NOMA appealed TDES' claim approval to the Appeals Tribunal.

Based upon their findings of fact, the Appeals Tribunal ruled that Mitchell was not eligible for unemployment compensation benefits pursuant to T.C.A. § 50-7-303(a)(2) due to employee misconduct. The Appeals Tribunal determined that the evidence showed that Mitchell's actions amounted to work-connected misconduct within the meaning of T.C.A. § 50-7-303(a)(2) for two reasons. First, the Appeals Tribunal concluded that Mitchell took personal payments from collection agencies that did business with NOMA in collecting past due debts; and second, the Appeals Tribunal concluded that Mitchell's failure to cooperate

3

with NOMA in responding to questions arising out of the scope of Mitchell's employment amounted to work-connected misconduct.

Instead of appealing the decision of the Appeals Tribunal to the Board of Review, Mitchell requested that TDES waive its $1,190.00 overpayment to him pursuant to T.C.A. § 50-7-303(d)(2) which provides:

> [u]pon written request by any such person submitted to the commissioner within ninety (90) days from the date of determination of the overpayment, the commissioner shall waive repayment of the overpaid amounts if such person proves to the satisfaction of the commissioner that all of the following conditions exist:
> (A) The overpayment was not due to fraud, misrepresentation or willful nondisclosure on the part of such person;
> (B) The overpayment was received without fault on the part of such person; and
> (C) The recovery of the overpayment from such person would be against equity and good conscience.

Mitchell's request for a waiver of the overpayment was referred to the Appeals Tribunal for a hearing and decision. The decision of the Appeals Tribunal states in part as follows:

> FINDINGS OF FACT: Claimant filed a claim for unemployment benefits on June 1, 1993, that was approved by Agency decision. The employer filed an appeal, and a hearing was conducted on July 22, 1993, at which time both parties appeared and testified. The Appeals Tribunal reversed the Agency decision, and denied benefits, creating an overpayment of $1190. Claimant is 61 years old and unemployed. His wife is employed and earns about $25,000 per year which is their total family income. They have two children, both of whom are college students, dependant upon their parents for support. Prior to his separation, claimant had worked as an account manager for a company for five years, and, at the time of separation, his salary was in excess of $60,000 per year. Prior to that, he worked for another company for seven years, and his salary was about $40,000 per year there. At his separation, they had living expenses for a household of four, based on a family income of about $90,000 per year, which included a house valued at about $200,000 on which they paid three mortgage payments. Claimant has since had to sell that house, and purchase another one. He has estimated his mortgage payments are about $900 per month. He is seeking and is able to accept employment if offered. He feels that his age is a hindrance in employer's [sic] wanting to offer him work, but otherwise has no limitations. He graduated from college with a degree in business. The date of the Appeals Tribunal decision creating the overpayment was July 30, 1993.

4

CONCLUSIONS OF LAW: While claimant is not now employed, his level of education and past work history show that he is capable of obtaining employment in a rather high salary level. The decision creating the overpayment in this matter is only about two months old. While it may not be reasonable on the part of the agency to demand immediate and total repayment of the overpayment, it is also not unreasonable to give claimant a period of time to see if he can obtain the type of employment he has had in the past. It is premature to waive the overpayment. The Appeals Tribunal finds that the claimant does not meet the criteria of TCA 50-7-303(d) in order to obtain a waiver of overpayment. The overpayment is not waived.

Mitchell appealed the Appeals Tribunal's decision to the Board of Review. The Board of Review adopted the findings of fact and decision of the Appeals Tribunal and affirmed the Appeals Tribunal's decision, denying Appellant's request for a waiver of the overpayment. Mitchell thereafter filed a petition to rehear which was denied by the Board of Review. Pursuant to T.C.A. § 50-7-304(i), Mitchell filed a petition for certiorari in chancery court seeking judicial review of the Board's decision. The chancery court dismissed Mitchell's petition for certiorari and affirmed the decision of the Board of Review, denying Mitchell's request for a waiver of the overpayment.

**LAW**

The two issues before this Court are as follows:

1) Whether the chancery court erred in affirming the decision of the Board of Review, denying Appellant's request for waiver of overpayments; and

2) Whether the chancery court erred in admitting additional evidence in the hearing on Appellant's petition for certiorari.

The standard of review of this Court and of the chancery court is set forth in T.C.A. § 50-7-304(i) which states in part as follows:

(2) The chancellor may affirm the decision of the board or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

5

(A) In violation of constitutional or statutory provisions;

(B) In excess of the statutory authority of the agency;

(C) Made upon unlawful procedure;

(D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(E) Unsupported by evidence which is both substantial and material in the light of the entire record.

(3) In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact. No decision of the board shall be reversed, remanded or modified by the chancellor unless for errors which affect the merits of the final decision of the board.

In reviewing an administrative decision, a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Southern Ry. Co. v. State Bd. of Equalization, 682 S.W.2d 196, 199 (Tenn. 1984). Factual issues are reviewed based upon a standard of substantial and material evidence. Id; CF Industries v. Tennessee Public Service Commission, 599 S.W.2d 536, 540 (Tenn. 1980). Substantial and material evidence has been defined as "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." Southern Ry. Co., 682 S.W.2d at 199; Pace v. Garbage Disposal District of Washington County, 390 S.W.2d 461, 463 (Tenn. 1965); Sweet v. State Tech. Institute at Memphis, 617 S.W. 2d 158, 161 (Tenn. Ct. App. 1981). If substantial and material evidence exists to support the agency's decision, we are limited to a review of the questions of law presented. Perryman v. Bible, 653 S.W.2d 424, 429 (Tenn. Ct. App. 1983); Irvin v. Binkley, 577 S.W.2d 677, 678 (Tenn. Ct. App. 1978).

A claimant shall be disqualified from benefits if the claimant was discharged from work due to misconduct connected with the claimant's work. T.C.A. § 50-7-303(a)(2). Although the statute does not define work-connected misconduct, the courts have been left with the authority interpret its meaning on a case-by-case basis. Wallace v. Stewart, 559 S.W.2d 647, 648 (Tenn. 1977); Troutt v. Carl K. Wilson Co., 410 S.W.2d 177, 180 (Tenn. 1966); Armstrong v. Neel, 725 S.W.2d 953 (Tenn. Ct. App. 1986); Jackson v. Bible,

6

611 S.W.2d 588, 590-91 (Tenn. Ct. App. 1980). In order to come within the scope of the statute, the work-connected misconduct must amount to a breach of duty owed to the employer. Weaver v. Wallace, 565 S.W.2d 867, 870 (Tenn. 1978); Armstrong, 725 S.W.2d at 955. Moreover, the fault of the employee must be considered when determining whether an employee has engaged in misconduct connected with work. McClellan v. Bible, 699 S.W.2d 555 (Tenn. 1985); Armstrong, 725 S.W.2d at 955.

In the present case, Mitchell was named in two counts of an indictment for receiving monetary kickbacks from collection agencies. Appellant was later arrested by FBI officials while at work on May 3, 1993. An FBI investigation uncovered two checks made payable to Mitchell from collection agencies named in the indictment for one-third of the amount that NOMA had paid the collection agencies two days earlier. After investigating the allegations against Mitchell, NOMA questioned Mitchell concerning certain irregularities in the files that Mitchell was required to generate and maintain. Mitchell, however, did not cooperate with NOMA in answering their questions concerning his involvement in this matter. Based upon the aforementioned evidence, we conclude that there is substantial and material evidence supporting the chancellor's decision, denying Mitchell's request for a waiver of the overpayment pursuant to T.C.A. § 50-7-303(a)(2) due to work-connected misconduct.

Mitchell also argues that the decision of the chancery court should be reversed on the ground that the chancery court admitted into evidence three additional exhibits which were not considered by the Appeals Tribunal or the Board of Review. Specifically, the chancellor admitted copies of checks received by Mitchell from various collection agencies, a portion of Mitchell's deposition from a separate civil action and portions of the transcript from Mitchell's hearing before the Appeals Tribunal.

It is the duty of the chancery court to review the record of the proceedings before the Board of Review and to determine whether there is any evidence in the record to sustain the Board's findings of fact; and if there is sufficient evidence, it is the chancellor's

7

duty to apply the applicable law to those findings. Cawthron v. Scott, 400 S.W.2d 240, 242-43 (Tenn. 1966); Irvin v. Binkley, 577 S.W.2d 677, 679 (Tenn. Ct. App. 1978). Consideration of additional evidence not properly before the Appeals Tribunal and the Board of Review is, therefore, beyond the chancellor's scope of review. Id.

We note, however, that no decision of the Board of Review "shall be reversed, remanded or modified by the chancellor unless for errors which affect the merits of the final decision of the board." T.C.A. § 50-7-304(i)(3). Similarly, T.R.A.P. 36(b) states that a final judgment shall not be set aside unless an "error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." See Keith v. Murfreesboro Livestock Market, Inc., 780 S.W.2d 751, 757-58 (Tenn. Ct. App. 1989) (stating that a judgment shall be reversed only for errors affecting the final judgment).

Notwithstanding the fact that the chancellor admitted into evidence three additional exhibits which were not before the Appeals Tribunal or the Board of Review, there is abundant evidence revealing that Appellant breached his fiduciary duties of trust and loyalty to his employer; thus, Mitchell's actions come squarely within the purview of work-connected misconduct as defined in T.C.A. § 50-7-303(a)(2). The chancellor's admission of the additional exhibits did not affect the outcome of the proceedings and was, therefore, harmless error.

The decision of the chancery court is hereby affirmed. Costs on appeal shall be taxed to the Appellant for which execution may issue if necessary.

 

                                                            _____

                                                            HIGHERS, J.

CONCUR:

_____
FARMER, J.


_____
LILLARD, J.