# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 27, 2015 Session

## MELISSA A. PHILLIPS v. BURNS PHILLIPS, ET. AL.

### Appeal from the Chancery Court for Cumberland County
No. 2014CH816     Hon. Ronald Thurman, Chancellor

_____

### No. E2015-00407-COA-R3-CV-FILED-OCTOBER 8, 2015

_____

This is an unemployment compensation case. The employee filed a claim for benefits following her termination from her employer. The Tennessee Department of Labor and Workforce Development granted the claim. The Appeals Tribunal reversed the decision, finding that the employee was ineligible for benefits pursuant to Tennessee Code Annotated section 50-7-303(a)(1)(A).[1] The Board of Review upheld the reversal. The employee filed a petition for judicial review, and the trial court reversed the decision. The employer and the Tennessee Department of Labor and Workforce Development appeal. We affirm the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

---

[1] (a) Disqualifying Events. A claimant shall be disqualified for benefits:

(1)(A) If the administrator finds that the claimant has left the claimant's most recent work voluntarily without good cause connected with the claimant's work. The disqualification shall be for the duration of the ensuing period of unemployment and until the claimant has secured subsequent employment covered by an unemployment compensation law of this state, another state, or the United States, and was paid wages by the subsequent employment ten (10) times the claimant's weekly benefit amount. No disqualification shall be made under this section, however, if the claimant presents evidence supported by competent medical proof that the claimant was forced to leave the claimant's most recent work because the claimant was sick or disabled and notified the claimant's employer of that fact as soon as it was reasonably practical to do so, and returned to that employer and offered to work as soon as the claimant was again able to work, and to perform the claimant's former duties. Pregnancy shall be considered in the same way as any other illness or disability within the meaning of this subsection (a). At the expiration of the period, if the claimant is not reemployed, the claimant shall be entitled to unemployment benefits under this chapter, if otherwise eligible under this chapter. Nor shall this disqualification apply to a claimant who left the claimant's work in good faith to join the armed forces of the United States[.]

Herbert H. Slatery, III, Attorney General and Reporter, Andree S. Blumstein, Solicitor General, and Jason I. Coleman, Assistant Attorney General, Nashville, Tennessee, for the appellant, Burns Phillips, Commissioner, Tennessee Department of Labor and Workforce Development.

Scott Newton Brown, Chattanooga, Tennessee, for the appellant, Plateau Pediatrics, PLC.

Rachel M. Moses and Janet Mynatt, Cookeville, Tennessee, for the appellee, Melissa A. Phillips.

## OPINION

## I.   BACKGROUND

Melissa A. Phillips ("Employee") worked for Plateau Pediatrics, PLC ("Employer") as a "back-up check-in and check-out receptionist" from February 10, 2010, through February 21, 2014, when she was discharged while on medical leave. Her medical leave began on October 16, 2013, when she underwent surgery on her shoulder. Her leave was extended after she underwent another surgery. On January 16, 2014, she notified Employer that her leave was projected to extend through April. On February 21, 2014, while Employee was still on medical leave, Employer advised her that it could no longer hold her position but that she would be considered for any opening that met her qualifications when she was released to resume work without restrictions.

On March 31, 2014, Employee was released by her doctor to resume work without restrictions. She did not advise Employer that she had been cleared for work. Instead, she applied for unemployment compensation that day with the Tennessee Department of Labor and Workforce Development ("the Agency"). The Agency initially determined that she was eligible for benefits and issued a decision, providing, in pertinent part,

> [Employee] was forced to leave most recent work because of a health condition that was not work related. The record shows [Employee] contacted [Employer] to reapply for work when released without restrictions. [Employer] discharged [Employee] while under a doctor's care. Medical documentation verifies it was necessary to be absent until 3/31/14. [Employee] properly notified [Employer] of the need to leave work.
>
> [Employee] has provided this agency medical evidence of the need to leave work and medical release to resume former duties. [Employee] contacted

[Employer] to request reemployment as soon as again able to perform former duties. However former work was not available.

Since [Employee has met all of the medical provisions under [Tennessee Code Annotated section 50-7-303] and work is not available with [Employer], the claim is approved as of [March 31, 2014].

Employer appealed the decision, arguing that Employee was ineligible for benefits because she failed to return and offer to work pursuant to Tennessee Code Annotated section 50-7-303(a)(1)(A). The Appeals Tribunal held a hearing by telephone, at which Employee and Employer's representatives, Villa Edwards and Susan Lankford, testified.

Employee testified that she maintained contact with Employer throughout her medical leave. She attended a meeting with Ms. Edwards in February 2014, after which she was told that "they would no longer be able to hold [her] position." Employer denied her request to postpone her separation until the following week when she was expected to receive an updated prognosis from her physician. She claimed that she was escorted to her office to retrieve her belongings and then "escorted out of the door."

Ms. Edwards testified that Employee was released because Employer experienced hardship due to her prolonged absence. She advised her that Employer would consider her for any opening that met her qualifications when Employee was able to resume work without restrictions. Neither Employee nor her physician advised Employer that Employee was released to resume work without restrictions. She claimed that the separation was amenable and that Employee was not instructed to retrieve her belongings. She explained that Employee chose to retrieve her belongings and that she and another receptionist assisted Employee, who was still recovering from surgery.

Ms. Lankford confirmed that Employee's work history was never in question. She explained that Employee was good at her job and that the patients loved her. She noted that Employee had missed work for extended periods in 2011 but that Employee's attendance had improved prior to her medical leave.

The Appeals Tribunal held that Employee was ineligible for benefits and liable for the overpayment of benefits, finding, in pertinent part, as follows:

The evidence establishes that [Employee] stopped working due to a non-work-related medical condition. She notified [Employer] as soon as she learned that she needed surgery; however, [Employee] failed to return to [Employer] and ask for her former job. [Employee] learned in February that [Employer] was no longer holding her job. Nevertheless, [Tennessee

Code Annotated section 50-7-303(a)(1)(A)] requires that a claimant return to the employer and offer to work as soon as the claimant is able to work and to [perform his or her] former duties.

Employee appealed the decision to the Board of Review. The Board of Review adopted the Appeals Tribunal's findings of fact and conclusions of law but stated,

> In appealing to the Commissioner's Designee, [Employee] argues that on February 19, 2014, she was escorted out of the building after she was discharged while she was on medical leave. It was not disputed that she was terminated, but she was terminated only after she initiated the separation. Under the circumstances, [Employee] is considered to have voluntarily quit for reasons not attributed to [Employer]; hence, she is disqualified under this section. At the same time she may qualify for benefits under the medical exception.

The Board of Review further found that she was ineligible for benefits pursuant to the medical exception, codified at Tennessee Code Annotated section 50-7-303(a)(1)(A). In so finding, the Board of Review stated that [Employee] failed to establish that she was forced to leave work due to an illness or injury and that she was later denied employment after offering to resume work once released to perform her former job without restrictions. The Board of Review noted that Employee was not relieved of the obligation to offer to return to work even though she was involuntarily terminated.

Employee filed a petition to rehear. Following the denial of her petition, she filed a petition for judicial review with the chancery court, naming the Board of Review and Employer (collectively "Respondents") as respondents. The court reversed the denial of benefits, holding that "the administrative record [did] not contain substantial and material evidence, and a reasonable basis in law, to support the legal conclusion of the Commissioner's designee." The court stated, in pertinent part,

> The voluntary quit disqualification provision of [Tennessee Code Annotated section 50-7-303(a)(1)(A)] does not apply in a situation where the employee has been involuntarily terminated from employment. The medical exception described in that section only applies to separations under that (voluntary quit) disqualification section. It is prefaced by the statement that "[n]o disqualification shall be made *under this section*," if the claimant shows entitlement to the medical exception. Tenn. Code Ann. § 50-7-303(a)(1) (emphasis added). This medical exception provides an alternative means for the unemployment compensation claimant to prevent voluntary quit disqualification, and allows her to become eligible when

employment is lost after a period of absence due to medical incapacity. It operates only to prevent voluntary quit disqualification. It has no impact on eligibility under the discharge provision of [section 50-7-303(a)(2)]. It does not disqualify an eligible claimant where her discharge without misconduct happened to occur during her approved medical leave.

The court held that Employee's claim should have been evaluated under Tennessee Code Annotated section 50-7-303(a)(2)(A), which disqualifies claimants who have been discharged for misconduct. Finding no evidence to support a conclusion that Employee was discharged for misconduct, the court further found that the "decision denying unemployment compensation because [Employee] had allegedly voluntarily quit without good cause [wa]s erroneous as a matter of law." This timely appeal followed.

## II.    ISSUE

We restate the issue raised on appeal as follows:

Whether there is substantial and material evidence in the administrative record, and a reasonable basis in law, to support the Board of Review's decision that Claimant was ineligible for unemployment compensation benefits pursuant to Tennessee Code Annotated section 50-7-303(a)(1)(A).

## III.    STANDARD OF REVIEW

Both the trial court and this court are obligated to apply the same standard in an appeal from an agency determination concerning unemployment compensation. *Ford v. Traughber*, 813 S.W.2d 141, 144 (Tenn. Ct. App. 1991). The standard of review is set forth by Tennessee Code Annotated section 50-7-304(i)(2) and reads, in pertinent part,

(2) The chancellor may affirm the decision of the commissioner or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(A) In violation of constitutional or statutory provisions;

(B) In excess of the statutory authority of the agency;

(C) Made upon unlawful procedure;

(D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(E) Unsupported by evidence that is both substantial and material in the light of the entire record.

The statute directs that the court shall not substitute its "judgment for that of the commissioner's designee as to the weight of the evidence on questions of fact." Tenn. Code Ann. § 50-7-304(i)(3). The statute further provides that "[n]o decision of the commissioner's designee shall be reversed, remanded or modified . . . unless for errors that affect the merits of the final decision of the commissioner's designee." *Id.*

Substantial and material evidence is defined as "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Sweet v. State Tech. Inst. at Memphis*, 617 S.W.2d 158, 161 (Tenn. Ct. App. 1981) (quoting *Pace v. Garbage Disposal Dist. of Washington Cnty.*, 390 S.W.2d 461, 463 (Tenn. Ct. App. 1965)). If the record contains such evidence, we must affirm the Board of Review's decision unless it is contrary to law. *Perryman v. Bible*, 653 S.W.2d 424, 429 (Tenn. Ct. App. 1983). The Board of Review's conclusions of law are subject to a de novo review with no presumption of correctness. *Wallace v. Sullivan*, 561 S.W.2d 452, 453 (Tenn. 1978).

This appeal also involves the interpretation of statutes. Statutory construction is a question of law that is reviewed de novo without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). This court's primary objective is to carry out legislative intent without broadening or restricting a statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the legislature is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we should apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

# IV.  DISCUSSION

The General Assembly enacted the Tennessee Employment Security Law ("the Employment Security Law") to address the effect of involuntary unemployment upon the unemployed worker, the worker's family, and the "health, morals and welfare of the people of this state." Tenn. Code Ann. § 50-7-102(a)(1).  The Employment Security Law operates "to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance."  Tenn. Code Ann. § 50-7-102(a)(2).  In order to secure benefits, one must meet the eligibility criteria and not fall within a specific ground of disqualification.

Here, Respondents[2] argue that Employee falls within a specific ground of disqualification, namely Tennessee Code Annotated section 50-7-303(a)(1)(A).  They argue that she voluntarily quit her employment because she was terminated while on medical leave.  They assert that her failure to return and offer to work disqualifies her from receiving benefits.  They further assert that she never provided the Agency with competent medical proof that she was released to resume work without restrictions.  Citing *Imperial Foods, Inc. v. McQuaid*, 874 S.W.2d 54 (Tenn. Ct. App. 1993), Employee responds that she does not fall within a specific ground of disqualification because she did not voluntarily quit pursuant to section 50-7-303(a)(1)(A) and because she was not discharged for misconduct pursuant to section 50-7-303(a)(2)(A).

In *Imperial*, the employee was granted one week of medical leave.  874 S.W.2d at 56.  On the last day of her medical leave, her employer advised her that "she no longer had a job" but that "she was 'welcome' to 'reapply' for any job that might be open on the following Monday."  *Id.* at 56-57.  Instead of returning to work, she filed a claim for unemployment compensation benefits.  *Id.* at 57.  This court held that the employee was entitled to benefits because she was terminated while on medical leave.  *Id.* at 60-61.  Like the employee in *Imperial*, Employee was terminated while on medical leave and invited to reapply for any opening that met her qualifications when she was released to resume work without restrictions.

Citing *Newman v. Davis*, W2013-00696-COA-R3-CV, 2014 WL 507100, at *11 (Tenn. Ct. App. Feb. 7, 2014), Respondents assert that Employee's claim must be analyzed under the medical exception even if she was discharged from her employment like the employee in *Imperial*.  The facts in *Newman* are inapposite to those presented in this case.  In *Newman*, the employee was never placed on an approved medical leave even though she was absent from work due to a non-work related injury.  2014 WL 507100, at *1-4.  She returned to work but was not permitted to resume employment

---

[2] Employer did not file an appellate brief.  Instead, Employer relies upon the position and argument set forth by the Board of Review.

because she did not provide a physician's statement verifying her absence and clearing her for work. *Id.* The employee never produced the necessary documentation and had not reported for work for approximately one year prior to her eventual termination for "failure to provide the necessary medical documentation to substantiate her extensive absence from work." *Id.* This court held that the employee was ineligible for benefits because she failed to return when she was released to resume work without restrictions. *Id.* at *11. In this case, Employee was terminated before she was released to resume work without restrictions.

Respondents also cite a number of cases in support of their assertion that Employee's termination should be evaluated as if she voluntarily quit her employment due to a medical condition. These cases are also inapposite to the facts of this case. *See generally Thach v. Scott*, 410 S.W.2d 173, 174 (Tenn. 1966) (upholding denial of benefits when employee was terminated after he refused to perform a work assignment due to a permanent health condition); *Yates v. Traughber*, 747 S.W.2d 338, 338-39, 341 (Tenn. Ct. App. 1987) (upholding denial of benefits when employee failed to return to work after his request for additional leave was denied); *Sargent v. Culpepper*, No. 03A01-9602-CH-0071, 1996 WL 600332, at *1, *3 (Tenn. Ct. App. Oct. 16, 1996) (upholding denial of benefits when employee failed to return to work after her request for part-time employment was denied).

Moreover, a plain reading of the Employment Security Law reveals that Employee's claim does not fall within a specific ground of disqualification from unemployment benefits. The statute at issue provides, in pertinent part, as follows:

(a) Disqualifying Events. A claimant shall be disqualified for benefits:

> (1)(A) If the administrator finds that the claimant has *left* the claimant's most recent work *voluntarily without good cause connected with the claimant's work*. . . . No disqualification shall be made *under this section*, however, if the claimant presents evidence supported by competent medical proof that the claimant was forced to leave the claimant's most recent work because the claimant was sick or disabled and notified the claimant's employer of that fact as soon as it was reasonably practical to do so, and returned to that employer and offered to work as soon as the claimant was again able to work, and to perform the claimant's former duties.

* * *

(2)(A) If the administrator finds that a claimant has been discharged from the claimant's most recent work for misconduct connected with the claimant's work, the disqualification shall be for the duration of the ensuing period of unemployment and until the claimant has secured subsequent employment covered by an unemployment compensation law of this state, another state, or the United States, and was paid wages by the subsequent employment ten (10) times the claimant's weekly benefit amount[.]

(Emphasis added). The statute limits the application of the medical exception to those who have voluntarily quit his or her employment. Employee did not voluntarily quit her employment, and her use of approved medical leave is not tantamount to a voluntary quit of employment. She was also not discharged for misconduct. Accordingly, we agree with the trial court that there was not substantial and material evidence in the administrative record, and a reasonable basis in law, to support the Board of Review's decision.

## V.    CONCLUSION

The judgment of the trial court is affirmed. We remand this case to the trial court for further proceedings as may be necessary. Costs of the appeal are taxed one-half to the appellant, Burns Phillips, Commissioner, Tennessee Department of Labor and Workforce Development, and one-half to the appellant, Plateau Pediatrics, PLC.

_____
JOHN W. McCLARTY, JUDGE